UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KATHERINE A. DUMONT,                    )
                                        )
            Plaintiff,                  )
      v.                                )        CIVIL ACTION
                                        )        NO. 16-11502-JGD
NANCY A. BERRYHILL,[1] Acting           )
Commissioner of Social Security,        )
                                        )
            Defendant.                  )


## MEMORANDUM OF DECISION AND ORDER ON CROSS-MOTIONS REGARDING DENIAL OF SOCIAL SECURITY BENEFITS

December 22, 2017

DEIN, U.S.M.J.

### I. INTRODUCTION

The plaintiff, Katherine A. Dumont ("Dumont"), has brought this action pursuant to

sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), in

order to challenge the final decision of the Commissioner of the Social Security Administration

("Commissioner") denying her claims for Social Security Disability Insurance ("SSDI") and

Supplemental Security Income ("SSI") benefits.  The matter is before the court on the

"Plaintiff's Motion to Reverse the Decision of the Commissioner" (Docket No. 22), by which the

plaintiff requests that the court reverse the decision to deny her claims for benefits and remand

the matter to the Social Security Administration for further administrative proceedings.  It is

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Nancy A. Berryhill has been substituted for Acting Commissioner
Carolyn W. Colvin as the defendant in this action.

also before the court on the "Motion to Affirm the Commissioner's Decision" (Docket No. 28), by which the Commissioner is seeking an order upholding her determination that Dumont is not disabled within the meaning of the Social Security Act, and is therefore not entitled to SSI or SSDI benefits. At issue is whether the findings of the Administrative Law Judge ("ALJ") regarding the plaintiff's residual functional capacity ("RFC") are internally consistent, and whether the ALJ appropriately considered expert medical evidence related to Dumont's mental capacity from two state agency medical consultants and an impartial medical expert. Also at issue is whether the ALJ clarified Dumont's RFC with respect to her social functioning as ordered by the Appeals Council. As detailed below, this court finds that the RFC is not internally inconsistent, but that the ALJ committed error in assessing the plaintiff's RFC by failing to appropriately consider the opinion evidence of two state agency medical consultants and an impartial medical expert that limits Dumont to performing simple as opposed to complex tasks. As a result, the case must be remanded. This court finds that the plaintiff's argument that the ALJ failed to comply with the Appeals Council's remand order is not fully developed. However, in light of the remand on other grounds, this court recommends that the ALJ revisit the social functioning component of the RFC. Therefore, and for all the reasons described herein, the plaintiff's motion to reverse or remand is ALLOWED, and the Commissioner's motion to affirm is DENIED.

## II. STATEMENT OF FACTS[2]

---

[2] References to pages in the transcript of the record proceedings shall be cited as "Tr. ___." The ALJ's Decision shall be cited as "Dec." and can be found beginning at Tr. 14.

Dumont was born on December 10, 1957, and was 52 years old at the expiration of her date last insured in 2009. (Tr. 65, 271-72). She completed high school and attended, but did not complete, college. (Tr. 66). When she was 19 years old, Dumont suffered a traumatic event. (Tr. 706). From 1998 to 2001, she worked as an office manager for a construction company. (Tr. 288). She was incarcerated for a year due to a conviction for embezzlement (Tr. 70) and then, in approximately 2003, began working as a registrar at Fisher College, where she remained until she was laid off in 2005. (Tr. 67, 288).

Dumont has a history of mental and physical health issues. She sought mental health treatment from 1996-1998 (Tr. 388-90, 436-61), 2001-2009 (Tr. 393-435, 1003-06), and 2010-2014[3] (Tr. 598-630; 742-60; 774-78; 804-66; 941-1002; 1066-122) for a variety of issues over the years, including anxiety, social phobia, depression, mood disorder, and post-traumatic stress disorder ("PTSD"). She claims that her PTSD, social phobia, manic depression and anxiety attacks, as well as her diabetes and breathing problems, preclude her from carrying out any type of gainful work activity. (Tr. 287). On appeal to this court, she is only challenging the ALJ's decision with regard to her claimed mental impairments.

### Procedural History

On September 7, 2010, Dumont filed applications for SSDI and SSI, claiming that she had been unable to work since May 31, 2005 due to PTSD, social phobia, manic depression, anxiety attacks, diabetes, and breathing problems. (Tr. 238-52). Her applications were denied initially on January 5, 2011, and upon reconsideration on September 9, 2011. (Tr. 129-34; 139-44).

---

[3] The record in this matter goes through 2014.

Dumont then requested and was granted a hearing before an ALJ, which took place on January 15, 2013 in Boston, Massachusetts. (Tr. 33-53; 145-50). The plaintiff, who was represented by counsel, appeared and testified at the hearing. (Tr. 33-53). On January 31, 2013, the ALJ issued a decision denying Dumont's claims for benefits. (Tr. 108-19).

Subsequently, Dumont filed a request for review of the ALJ's decision by the Social Security Appeals Council. (Tr. 182). The Appeals Council granted Dumont's request for review, and on July 2, 2014 remanded the matter to the ALJ for further evaluation of the record. (Tr. 125-27). In particular, but without limitation, on remand the ALJ was to determine the claimant's social limitations, with references to evidence in the record, and to obtain evidence from a vocational expert to clarify the assessed limitations on the claimant's occupational base. (Dec. 1; Tr. 14).

Following the remand, a hearing was held on December 18, 2014 in Boston, Massachusetts before a different ALJ. (Tr. 54-100). The plaintiff, who was represented by counsel, appeared and testified at the hearing. (Id.). The ALJ also obtained testimony from Dr. Reddick, an impartial medical expert, and Ms. Hutchinson, a vocational expert ("VE"), who described Dumont's vocational background based on her past work experience and responded to hypothetical questions that were designed to determine whether jobs exist in the national and regional economies for an individual with the same age, educational background, work experience and RFC as the plaintiff. (Id.).

On March 19, 2015, the ALJ issued a decision denying Dumont's claims for benefits. (Tr. 14-24). On June 3, 2015, Dumont appealed the decision to the Appeals Council, which denied

review on May 17, 2016, thereby making the ALJ's decision the final decision of the Commissioner for purposes of review.  (Tr. 1-4, 9-10).  Accordingly, the plaintiff has exhausted all of her administrative remedies and the case is ripe for judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## The ALJ's Decision

The ALJ concluded that from May 31, 2005 through the date of his decision on March 19, 2015, Dumont "ha[d] not been under a disability, as defined in the Social Security Act," which defines "disability" as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months."  (Dec. Finding #7; Tr. 24).  See also 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  There is no dispute that the ALJ, in reaching his decision that Dumont was not disabled, performed the five-step sequential evaluation required by 20 C.F.R. §§ 404.1520 and 416.920.  The procedure resulted in the following analysis, which is further detailed in the ALJ's "Findings of Fact and Conclusions of Law."  (See Dec. 3-11; Tr. 16-24).

The first inquiry in the five-step evaluation process is whether the claimant is "engaged in substantial gainful work activity[.]"  Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).  If so, the claimant is automatically considered not disabled and the application for benefits is denied. See id.  In this case, the ALJ found that Dumont had not engaged in such activity since May 31, 2005, the alleged onset date of her disability.  (Dec. Finding #2; Tr. 16).  Therefore, he proceeded to the second step in the sequential analysis.

The second inquiry is whether the claimant has a "severe impairment," meaning an "impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is deemed not to be disabled and the application for benefits is denied. See Seavey, 276 F.3d at 5. Here, however, the ALJ determined that Dumont suffered from the severe impairments of depression and panic attacks, as well as the non-severe impairments of diabetes mellitus and chronic pulmonary insufficiency/asthma. (Dec. 4; Tr. 17). Because he found that the plaintiff had an impairment that was severe, the ALJ's analysis continued.

The third inquiry is whether the claimant has an impairment equivalent to a specific list of impairments contained in Appendix 1 of the Social Security regulations, in which case the claimant would automatically be found disabled. See Seavey, 276 F.3d at 5; 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). At this step, the ALJ concluded that the plaintiff's impairments, either alone or in combination, did not meet or medically equal any of the listed impairments. (Dec. Finding #4; Tr. 17). Consequently, he proceeded to step four.

The fourth inquiry asks whether "the applicant's 'residual functional capacity' is such that he or she can still perform past relevant work[.]" Seavey, 276 F.3d at 5. Thus, in order to answer this inquiry, the ALJ must first make an assessment regarding the claimant's RFC. In the instant case, the ALJ assessed Dumont's RFC as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)[4] except for the following limitations and

[4] 20 C.F.R. §§ 404.1567(b) and 416.967(b) define "light work" as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or

restrictions: she can perform routine tasks up to and including SVP-8 level work; she needs her own cubicle or workspace; and she can have less than intensive, i.e. occasional supervision.

(Dec. Finding #5; Tr. 19) (footnote added).

In reaching his conclusion regarding the plaintiff's RFC, the ALJ first considered all of Dumont's symptoms and the extent to which those symptoms were consistent with the objective medical evidence and other evidence in the record. (Dec. 6; Tr. 19). Accordingly, the ALJ reviewed the plaintiff's medical records, which consisted of records covering the time period from February 1996 through November 2014. (See Dec. 6-10; Tr.19-23). He also considered the available opinion evidence, as well as statements that Dumont had made at the hearing regarding her symptoms and the extent to which those symptoms interfered with her ability to carry out day-to-day activities. (Id.). Because the ALJ found that Dumont's medically determinable impairments could reasonably be expected to cause some alleged symptoms, he went on to determine whether her subjective statements about the limiting effects of her symptoms were credible in light of the entire record. (See Dec. 7; Tr. 20). The ALJ concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of her symptoms are not entirely credible for the reasons explained in this decision." (Id.).

Dumont contends that the ALJ committed three reversible errors in assessing her RFC. First, Dumont challenges the RFC as internally inconsistent. Second, she asserts that the ALJ ignored the opinions of Dr. Maliszewski, Dr. Lasky and Dr. Reddick, that her mental capacity

---

leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

limits her to performing simple tasks, a conclusion that is inconsistent with the ALJ's RFC finding that she is capable of performing work up to and including SVP-8 work. Third, Dumont argues that the ALJ failed to clarify Dumont's RFC with respect to her social functioning as ordered by the Appeals Council on remand. For the reasons described below, this court finds that the RFC is not internally inconsistent, but that the ALJ's handling of the medical opinion testimony was insufficient and that, therefore, remand is warranted. This court also finds that the plaintiff's argument that the ALJ failed to comply with the Appeals Council's remand order to clarify Dumont's social limitation is not fully developed by the plaintiff.

After explaining the basis for his RFC determination, the ALJ compared Dumont's RFC to the physical and mental demands of her past work as a college registrar and office manager, and considered the VE's testimony that an individual with Dumont's age, education, work history and RFC would be capable of returning to each of those positions. (Dec. 10-11; Tr. 23-24). The ALJ concluded that Dumont was capable of performing her past relevant work as the work is actually and generally performed in the national economy. (Id.).

If an ALJ finds that the claimant has the RFC to perform her past relevant work, the claimant is deemed not to be disabled, and there is no need for the ALJ to proceed to step five. See 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv) ("[a]t the fourth step, we consider our assessment of your [RFC] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled"); Seavey, 276 F.3d at 5 (explaining that "[a]ll five steps are not applied to every applicant, as the determination may be concluded at any step along the process"). However, the ALJ in the instant case made an alternative finding under step five.

The fifth inquiry is whether, given the claimant's RFC, education, work experience and age, the claimant is capable of performing other work. See Seavey, 276 F.3d at 5; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If so, the claimant is not disabled. Id. At step five, the Commissioner has the burden "of coming forward with evidence of specific jobs in the national economy that the applicant can still perform." Seavey, 276 F.3d at 5. Here, the ALJ relied on the VE's testimony to conclude that Dumont was capable of performing jobs that exist in significant numbers in the national economy, including the sedentary skilled job of an accounting clerk and the sedentary semi-skilled job of a billing clerk. (Dec. 10-11; Tr. 23-24). Therefore, the ALJ concluded that "although . . . the claimant's additional limitations do not allow her [to] perform the full range of light work, considering the claimant's age, education and transferable work skills, a finding of 'not disabled' is appropriate[.]"

Additional factual details relevant to this court's analysis are described below where appropriate.

### III. ANALYSIS

In this action, Dumont is seeking judicial review of the Commissioner's "final decision" pursuant to the Social Security Act § 205(g), 42 U.S.C. § 405(g) (the "Act"). The Act provides in relevant part as follows:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action …. The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by *substantial evidence*, shall be conclusive ….

42 U.S.C. § 405(g) (emphasis added).  The Supreme Court has defined "substantial evidence" to mean "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); accord Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).

As the First Circuit has explained:

> In reviewing the record for substantial evidence, we are to keep in mind that "issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the [Commissioner]." The [Commissioner] may (and, under [her] regulations, must) take medical evidence.  But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [her], not for the doctors or for the courts.  We must uphold the [Commissioner's] findings in this case if a reasonable mind, reviewing the record as a whole, could accept it as adequate to support [her] conclusion.

Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).  Therefore, "the court's function is a narrow one limited to determining whether there is substantial evidence to support the [Commissioner's] findings and whether the decision conformed to statutory requirements."  Geoffroy v. Sec'y of Health & Human Servs., 663 F.2d 315, 319 (1st Cir. 1981). "[T]he Court must uphold the Commissioner's determination, 'even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.'"  Amaral v. Comm'r of Soc. Sec., 797 F. Supp. 2d 154, 159 (D. Mass. 2010) (quoting Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987)).

"Even in the presence of substantial evidence, however, the Court may review conclusions of law, and invalidate findings of fact that are 'derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts.'" <u>Musto v. Halter</u>, 135 F. Supp. 2d 220, 225 (D. Mass. 2001) (quoting <u>Nguyen v. Chater</u>, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam)) (internal citations omitted). "Thus, if the ALJ made a legal or factual error, the court may reverse or remand such decision to consider new, material evidence or to apply the correct legal standard." <u>Ross v. Astrue</u>, C.A. No. 09-11392-DJC, 2011 WL 2110217, at *2 (D. Mass. May 26, 2011) (internal citation omitted).

In support of her motion to reverse the Commissioner's decision and remand, Dumont contends that the ALJ committed error by (1) assessing an RFC that it is internally inconsistent; (2) failing to appropriately address medical opinion evidence from Dr. Maliszewski, Dr. Lasky, and Dr. Reddick that her mental capacity limits her to performing simple, as opposed to complex, tasks; and (3) failing to clarify the RFC with respect to Dumont's social functioning in contravention of the Appeals Council's directive. This court will take each argument in turn.[5] As detailed herein, this court concludes that the ALJ's treatment of the medical evidence limiting her capacity to performing simple tasks requires that this case be remanded.

**A.** **<u>Internal Inconsistency in the RFC</u>**

---

[5] At oral argument, the plaintiff raised for the first time two entirely new theories of error as to the ALJ's assessment of the RFC: that the ALJ gave improper weight to the plaintiff's testimony because (1) she suffers from a serious mental health condition and therefore her testimony about her capabilities is inherently unreliable; and (2) she is not a medical source and therefore her testimony was given improper weight. The court declines to address these issues as they were not raised in her pleadings. <u>Solmetex, LLC v. Apavia LLC, et al.</u>, 149 F. Supp. 3d 192, 194 (D. Mass. 2016) (argument waived where it was argued for the first time at oral argument and was not briefed).

The RFC provides that with certain limitations, Dumont is capable of performing "routine tasks up to and including SVP-8 level work." (Dec. Finding #5; Tr. 19). The plaintiff asserts that the phrase "routine tasks up to and including SVP-8 level work" is internally inconsistent. (Pl. Mem. (Docket No. 23) at 7). This court disagrees.

SVP stands for "Specific Vocational Preparation" and is defined by the Dictionary of Occupational Titles ("DOT") as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, App. C, § II.[6] The DOT assigns an SVP for each occupation, on a scale of SVP-1 through SVP-9. Id. The DOT defines SVP-8 level work as work taking preparation in the amount of over four years and up to and including 10 years to acquire. Id. Social Security Ruling 00-4p provides that "[u]sing the skill level definitions in 20 C.F.R. 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semiskilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT." SSR 00-4p. Thus, SVP-8 is "skilled work" that takes preparation in the amount of over four years and up to and including 10 years to acquire.

"Skilled work" is defined by the Social Security Administration as requiring

> qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced. Skilled work may require laying out work, estimating quality, determining the suitability and needed quantities of materials, making precise measurements, reading blueprints or other specifications, or making necessary computations or mechanical adjustments to control or regulate the work. Other skilled jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity.

---

[6] Available at http://www.occupationalinfo.org/appendxc_1.html (last visited on December 22, 2017).

20 C.F.R. §§ 404.1568(c), 416.968(c).

Dumont does not read the ALJ's reference to her ability to perform "routine tasks up to and including SVP-8 level work" as meaning she can perform "routine tasks," "SVP-8 level work" and everything in between, which is one plausible interpretation of the ALJ's assessment. Rather, Dumont contends that the ALJ was ruling that she could perform SVP-8 level work despite being limited to "routine tasks," and that this ruling was internally inconsistent. This court disagrees. Instead, as the Commissioner persuasively argues, "the restriction to 'routine tasks up to and including SVP-8 level work' was clearly meant to convey that Plaintiff's mental impairments did not prevent her from doing the usual (i.e., 'routine') tasks generally associated with her past [SVP level 8] office work." (Comm'r Mem. (Docket No. 29) at 15).

This reading is supported by the ALJ's hypothetical question to the VE, in which the ALJ equated the phrase "routine tasks" with the phrase "normal functions." (See Tr. 97 ("Is able to do routine tasks, normal functions and work up to and including I would say SVP of 8.")). Therefore, this court finds no inconsistency and no error in this regard.

### B.    Treatment of Medical Opinion Evidence

Dumont argues that in assessing her RFC, the ALJ failed to address or provide reasons for rejecting medical opinions regarding her mental limitations. This court agrees.

The RFC assessment "must always consider and address medical source opinions." SSR 96–8p, 1996 WL 374184, at *7. "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Id. "The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other

evidence." Id. The ALJ may have reasons for accepting certain limitations while rejecting others, but he is required to "explain why he rejected some limitations contained in an RFC assessment from a medical source while appearing to adopt other limitations contained in the assessment." Watkins v. Berryhill, No. 3:16-CV-30117-KAR, 2017 WL 4365158, at *11 (D. Mass. Sept. 29, 2017) (internal citation and quotation omitted). While "an ALJ's written decision need not directly address every piece of evidence in the administrative record if it is cumulative of evidence already discussed by the ALJ or fails to support the claimant's position[,] . . . an ALJ may not simply ignore relevant evidence, especially when that evidence supports a claimant's cause." Dube v. Astrue, 781 F. Supp. 2d 27, 35 (D.N.H. 2011) (internal quotation and citation omitted). "The ALJ must confront the evidence that does not support [his] conclusion and explain why that evidence was rejected." Moore v. Colvin, 743 F.3d 1118, 1123 (7th Cir. 2014). "Moreover, a court must be able to determine whether the ALJ considered the contrary evidence and chose to discredit it, or whether it was 'simply ignored.'" Dube, 781 F. Supp. 2d at 35 (internal quotation and citation omitted). Failure to address conflicts in the evidence is error. Anderson v. Comm'r of Social Sec., 195 Fed. Appx. 366, 370 (6th Cir. 2006).

The plaintiff persuasively argues that the ALJ failed to explain why opinions from three consulting medical experts, Dr. Maliszewski, Dr. Lasky and Dr. Reddick, that Dumont's mental capacity limited her to performing simple tasks, was not adopted.[7] As such, remand is warranted for proper consideration of their opinions and further evaluation of Dumont's RFC.

Treatment of Dr. Maliszewski's Opinion

---

[7] Dumont further argues that this is a significant error, because had the ALJ adopted the finding that Dumont is limited to simple work, a finding of disability would have been directed under the Social Security Administration Rules. (See Pl. Br. at 10). The court expresses no opinion on this issue.

On September 9, 2011, Dr. Maliszewski, a state agency non-examining medical consultant, reviewed Dumont's medical records and completed a Psychiatric Review Technique Form ("PRTF") (Tr. 779-92) and a Mental Residual Functional Capacity Assessment ("MRFCA") (Tr. 793-96). In the PRTF, Dr. Maliszewski rated the degree of the plaintiff's limitations in her activities of daily living, social functioning, and ability to maintain concentration, persistence, or pace. (Tr. 779-92). Dr. Maliszewski concluded that Dumont had a "mild" limitation in her activities of daily living but "moderate" limitations in maintaining social functioning and concentration, persistence, or pace. (Tr. 789). Specifically, in the MRFCA, Dr. Maliszewski checked off boxes indicating that Dumont was "moderately limited" in four out of eight areas of concentration and pace (Tr. 793-94), and "moderately limited" in two out of five areas of social interaction (Tr. 794). He also concluded that she was "moderately limited" in her ability to understand and remember detailed instructions and her ability to respond appropriately to changes in the work setting. (Tr. 793-94).

Importantly, Dr. Maliszewski also provided a narrative statement in which he translated his findings into a specific assessment of Dumont's mental RFC. (Tr. 795). Thus, Dr. Maliszewski opined that Dumont was "[c]apable of recall for simple tasks"; had "attention intact sufficiently to perform simple tasks"; "would perform better in a more independent job role"; and that her "mood would not prevent her from performing concrete tasks in a normal, structured work setting." (Id.).

The ALJ included in his recitation of facts that Dr. Maliszewski had opined that Dumont was "capable of performing simple tasks." (Dec. 8; Tr. 21). However, the ALJ did not adopt that

opinion and provided no explanation as to why. The ALJ's full explanation of his treatment of

Dr. Maliszewski's opinion is as follows:

> I give the opinion of Dr. Maliszewski, another state agency mental consultant great weight to show that the claimant is capable of working in this case. Dr. Maliszewski noted the claimant's GAF score was rated at 55, with moderate mental symptoms. I also give the opinion of Dr. Maliszewski great weight that the claimant's work performance would likely be improved in a more independent job role. As a result, I have limited the claimant's social interactions in the workplace in the above residual functional capacity assessment.

(Dec. 9; Tr. 22) (citations omitted).

Thus, while the ALJ purported to adopt Dr. Maliszewski's opinion regarding Dumont's

social limitations, he neither adopted nor provided an explanation for rejecting Dr.

Maliszewski's opinions regarding her mental limitations, namely that her recall and attention

limited her to performing "simple tasks," and that her mood would limit her to performing

"concrete tasks.'' (Tr. 795). As the Commissioner conceded at oral argument, a limitation to

simple tasks is inconsistent with a finding that a claimant can perform work at the SVP-8 level.

It is clear that the ALJ failed to address a conflict in the evidence with regard to the level of

work that Dumont is capable of performing.

The ALJ's assertion that he afforded Dr. Maliszewski's opinion "great weight to show

that [Dumont] is capable of working in this case" does not adequately explain the basis for

omitting any discussion of Dr. Maliszewski's opinion regarding Dumont's limitations to "simple"

or "concrete" tasks, and this court is not entitled to speculate as to the reasons for the ALJ's

apparent rejection of those limitations. The ALJ's failure to offer an explanation constitutes

error warranting remand. See Watkins, 2017 WL 4365158, at *11 (ALJ's decision remanded

where ALJ determined plaintiff's RFC without explaining his treatment of relevant evidence);

<u>Dube</u>, 781 F. Supp. 2d at 34–36 (ALJ's decision reversed for failure to discuss findings by state agency consultant that contradicted ALJ's conclusion); <u>Crosby v. Heckler</u>, 638 F. Supp. 383, 385–86 (D. Mass. 1985) ("The ALJ cannot reject evidence for no reason, or for the wrong reason, and must explain the basis for his findings. Failure to provide an adequate basis for the reviewing court to determine whether the administrative decision is based on substantial evidence requires a remand to the ALJ for further explanation.") (internal citation omitted).

<u>Treatment of Dr. Lasky's Opinion</u>

At oral argument the plaintiff challenged the ALJ's failure to address all aspects of the opinion proffered by Dr. Lasky, another state agency medical consultant.[8]

On December 7, 2010, Dr. Lasky, a state agency non-examining consultant, reviewed Dumont's medical records and completed a PRTF (Tr. 713-26) and a MRFCA (Tr. 709-12). In the PRTF, Dr. Lasky rated the degree of the plaintiff's limitations in her activities of daily living, social functioning, and ability to maintain concentration, persistence, or pace. (Tr. 713-26). Dr. Lasky concluded that Dumont had "moderate" limitations in maintaining social functioning and "mild" limitations in concentration, persistence, or pace. (Tr. 723). In the MRFCA, Dr. Lasky checked off boxes indicating that Dumont was "moderately limited" in five out of eight areas of concentration, persistence and pace (Tr. 709-710), and "moderately limited" in two out of five

_____

[8] The plaintiff did not raise her concerns about the treatment of Dr. Lasky's opinion in her pleadings, but rather offered the ALJ's treatment of Dr. Lasky's opinion as further evidence to support her contention that the ALJ had failed to address various expert opinions to the effect that she is limited to performing simple tasks. Since this court has determined that a remand is necessary due to the ALJ's failure to address this limitation, and Dr. Lasky's opinion will be part of the record on remand, this court will address the ALJ's treatment of Dr. Lasky's opinion herein. Again, however, this court counsels that arguments raised for the first time during oral argument are generally not considered by the court.

areas of social interaction (Tr. 710). He also concluded that she was "moderately limited" in her ability to understand and remember detailed instructions. (Tr. 709).

Importantly, Dr. Lasky also provided a narrative statement in which he translated his findings into a specific assessment of Dumont's mental RFC. (Tr. 711). Specifically, Dr. Lasky opined that Dumont had "mild to moderate" levels of mental health difficulties "but her general ability to function appears [within normal limits] . . . ." Dr. Lasky continued, "specifi-cally, [claimant] appears: *a. able to understand and recall short and simple instructions.* b. able to sustain concentration, persistence and pace w/o interruptions from psych based [symptoms]. c. able to interact appropriately w/ co-workers and supervisors [within normal limits]. d. able to adapt to routine changes in the work setting." (Tr. 711) (emphasis added).

In assessing Dumont's RFC, the ALJ considered and weighed Dr. Lasky's opinion but in doing so did not address Dr. Lasky's opinion regarding Dumont's limitation to understanding and recalling short and simple instructions. As the ALJ found:

> I give the opinion of Dr. Lasky, a state agency mental consultant great weight to show that the claimant is capable of working in this case. I also give the opinion of Dr. Lasky great weight to show that the claimant's general ability to function appears within normal limits, and she is able to sustain concentration, persistence and pace, without interruptions from mentally based symptoms.

(Dec. 9; Tr. 22) (citations omitted). The ALJ did not address Dr. Lasky's opinion regarding short and simple instructions in the RFC, although the ALJ did acknowledge that opinion in his recitation of facts. (Dec. 7-8; Tr. 20-21) ("Dr. Lasky gave the opinion that the claimant was capable of understanding and recalling short and simple instructions . . . ."). However, like in the case of Dr. Maliszewski, nowhere in his decision did the ALJ provide a reason for rejecting this opinion in the RFC. This court is not entitled to speculate as to the reasons for the ALJ's

apparent rejection of the limitation regarding recall and understanding of short and simple instructions.  As the cases cited above hold, his failure to offer an explanation constitutes error warranting remand.  See, e.g., Watkins, 2017 WL 4365158, at *11; Dube, 781 F. Supp. 2d at 34-36; Crosby, 638 F. Supp. At 385-86.

Treatment of Dr. Reddick's Opinion

Plaintiff also argues that the ALJ impermissibly ignored testimony by Dr. Reddick that Dumont was not capable of performing complex tasks.  Dr. Reddick, an impartial medical expert, testified at the December 2014 administrative hearing regarding the medical evidence that had been presented to her for her review.  The ALJ posed the following question: "based on your review . . . is there anything you would see in the nature of restrictions of limitations which should be imposed based on [Dumont's] psychiatric problems?"  (Tr. 59-60).  Dr. Reddick answered:

> From what I could see of the assessments that were made of her, she seems to be capable of doing basic work.  There was a mention that she would probably do better in work where she could work perhaps more independently.  But she was also rated as capable of working in a normal environment, and having only moderate limitations in a few areas in the assessments that I saw....

(Tr. 60).  Dr. Reddick also testified that Dumont had worked since having suffered a traumatic experience at age 19.  (Tr. 61).

In assessing Dumont's RFC, the ALJ considered and weighed Dr. Reddick's opinion as follows:

> I give the opinion of Dr. Reddick, an impartial medical expert great weight to show that the claimant did have trauma in her past, but the claimant continued to work in spite of her past trauma.  Therefore I give the opinion of Dr. Reddick great weight to show that the claimant is fully capable of working.

(Dec. 9; Tr. 22) (citation omitted).

Though the ALJ concluded from Dr. Reddick's testimony that Dumont was *capable* of working, the ALJ failed to address Dr. Reddick's opinion as to the *level* of work Dumont could perform given her mental capacity, namely, that Dumont was capable of performing "*basic work.*" (Tr. 60) (emphasis added). Because a finding that Dumont is capable of performing "basic work" is insufficient to support the ALJ's finding that Dumont could perform SVP-8 level work, and, as the ALJ did not address Dr. Reddick's opinion as to "basic work," remand is warranted. While, as the Commissioner argues, the ALJ need not adopt the entirety of a medical opinion in the record and may adopt portions of an opinion, that does not excuse the ALJ from addressing or resolving conflicts in the evidence. (See Comm'r Mem. at 18). As the cases cited above make clear, the ALJ cannot simply ignore relevant medical testimony contrary to his RFC assessment without explanation. See, e.g., Watkins, 2017 WL 4365158, at *11; Dube, 781 F. Supp. 2d at 34-36; Crosby, 638 F. Supp. at 385-86. Therefore, this case must be remanded.

### C.     Social limitations

Dumont also argues that the ALJ failed to comply with the Appeals Council's remand order to clarify Dumont's social limitation. However, as detailed herein, this argument is not fully developed by the plaintiff.

In an opinion dated July 2, 2014, the Appeals Council remanded Dumont's case to the ALJ, finding on review that while the ALJ had in his decision dated January 31, 2013 determined that Dumont had moderate difficulty maintaining social functioning, the RFC failed to contain corresponding social limitations and, in contrast, explicitly provided that Dumont was "able to

interact appropriately with co-workers and supervisors[.]" (See Tr. 125-28). Therefore, the Appeals Council directed that the ALJ "[g]ive further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and 416.945 and Social Security Ruling 85-16 and 96-8p)."[9] (Tr. 127). In doing so, the Appeals Council, opined that "Section 12.00C(2) of the listings indicates that social functioning refers to the claimant's ability to interact independently, appropriately, effectively, and on a sustained basis with other individuals" and that "[s]ocial functioning in work situations may involve interactions with the public, responding appropriately to persons of authority (e.g., supervisors), or cooperative behaviors involving coworkers." (Tr. 126). The Appeals Council then directed that on remand the ALJ should "[f]urther evaluate [Dumont's] mental impairments in accordance with the special technique described in 20 CFR 404.1520a and 416.920a, documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 C.F.R. 404.1520a(c) and 416.920(c)." (Id.)

The case was remanded to a different ALJ, who in his March 19, 2015 decision, also concluded that Dumont had moderate difficulties in social functioning. (See Dec. 5; Tr. 18). In assessing Dumont's RFC, the ALJ did include limitations regarding social functioning, specifically that Dumont "needs her own cubicle or workspace; and she can have less than intensive, i.e. occasional supervision." (Dec. Finding #5; Tr. 19). He also explained the basis of the social limitation in the RFC was Dr. Maliszewski's opinion that Dumont's work performance would

---

[9] The Appeals Council also directed the ALJ to offer Dumont a new hearing, take evidence from a VE, take "any further action needed to complete the administrative record," and issue a new decision. (Tr. 127).

"likely be improved in a more independent job role" and that, accordingly, the ALJ "limited [Dumont's] social interactions in the workplace." (Dec. 9; Tr. 22). The plaintiff argues that this assessment is insufficient because the ALJ failed to address whether she was limited in her ability to have contact with co-workers and/or the public. (Pl. Mem. at 8).

While the ALJ did not address Dumont's ability to interact with co-workers or the public, beyond needing her own workspace, the plaintiff has not identified evidence in the record that the ALJ failed to properly consider. Nor does the plaintiff identify techniques that the ALJ failed to apply as directed by the Appeals Council. Moreover, it is unclear whether this matter will be addressed by the same or a different ALJ on remand. Therefore, this court will not further address the sufficiency of the ALJ's compliance with the directive of the Appeals Council. Nevertheless, this court recommends that, on remand, the ALJ revisit the finding regarding the social functioning component of the RFC in accordance with the Appeals Council's instructions.

## IV. CONCLUSION

For all the reasons detailed herein, the "Plaintiff's Motion to Reverse the Decision of the Commissioner" (Docket No. 22) is ALLOWED, and the defendant's "Motion to Affirm the Commissioner's Decision" (Docket No. 28) is DENIED. The matter shall be remanded to the ALJ for further proceedings consistent with this decision.[10]

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge

---

[10] This court expresses no opinion as to the appropriate outcome of additional administrative proceedings.